UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

RONALD A. ROGANTI,                                    Civil Action No.:  12-cv-0161(PAE)

                              Plaintiff,

              - against -                              DOCUMENT
                                                      ELECTRONICALLY FILED
METROPOLITAN LIFE INSURANCE COMPANY,
METROPOLITAN LIFE RETIREMENT PLAN FOR
UNITED STATES EMPLOYEES, SAVINGS AND
INVESTMENT PLAN FOR EMPLOYEES
OF METROPOLITAN LIFE AND PARTICIPATING
AFFILIATES, THE METLIFE AUXILIARY
PENSION PLAN, AND THE METROPOLITAN
LIFE SUPPLEMENTAL AUXILIARY SAVINGS
AND INVESTMENT PLAN,

                              Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY**


                    The Wagner Law Group
                    A Professional Corporation
                    *Attorneys for Plaintiff*
                    David G. Gabor
                    99 Summer Street, 13th Floor
                    Boston, MA  02110
                    Telephone:  (617) 357-5200
                    Facsimile:  (617) 357-5250

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

   ROGANTI IS PERSONA NON GRATA ......................................................... 1

   CONFLICTS OF INTERESTS ...................................................................... 2

THE QUESTION .................................................................................................. 3

   MICHAEL BAILEY ............................................................................... 4

      a.  MetLife's Representations .................................................. 4

      b.  The Record .................................................................. 4

      c.  The Potential Harm ......................................................... 5

      d.  Bailey Could Not Calculate the Pension .................................. 5

   THE PLAN DOCUMENTS ..................................................................... 6

   POTENTIAL REMEDIES ....................................................................... 6

   ROGANTI ASKED THAT METLIFE ADJUST THE PENSION ........................... 7

   LOST WAGES ................................................................................... 7

   METLIFE TREATED THE AWARD AS BENEFITS ELIGIBLE COMPENSATION ....... 8

ARGUMENT ....................................................................................................... 9

   POINT I-THE APPROPRIATE STANDARD ................................................ 9

      a.  Bernstein's Reasoning is Flawed ........................................ 10

      b.  Bernstein's Bias .......................................................... 11

      c.  The Only Plausible Conclusion ........................................... 12

      d.  Bernstein's Declaration .................................................. 12

   POINT II-ARBITRARY AND CAPRICIOUS ............................................... 12

   POINT III-COUNSEL FEES ................................................................ 13

CONCLUSION ................................................................................................... 15

## **TABLE OF AUTHORITIES**

### CASES

*Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993)........................  12

*Alberigo v. Hartford*, 891 F. Supp. 2d 383, 395 (E.D.N.Y. 2012)............................ 12, 13

*Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419
U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)...............................................12

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987).....14

*Fairbaugh v. Life Ins. Co. of N. Am.*, 737 F. Supp. 2d 68, 81, 86 (D. Conn. 2010)........... 12, 13

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S. Ct. 2149, 2156, 2158-9,
176 L. Ed. 2d 998 (2010)................................................................. 14

*Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993).......................................  12

*McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130-31 (2d Cir. 2008)................. 10

*Miller v. United Welfare Fund*, 72 F.3d 1066, 1070, 1072 (2d Cir. 1995)................... 12, 13

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)............................. 12

*Pulvers v. First UNUM Life Insurance Co.*, 210 F.3d 89, 92 (2d Cir.2000)................... 10

*Sisavang Danouvong v. Life Ins. Co. of N. Am.*, 659 F.Supp.2d 318, 324 (D.Conn.2009).  12

*Sullivan v. LTV Aerospace and Defense Co.*  82 F.3d 1251, 1259 (2d Cir. 1996)............ 10

*Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 (2d Cir. 1996).................... 13

### STATUTES AND AUTHORITIES

ERISA Section 404(a)(1)................................................................10

## PRELIMINARY STATEMENT

Ronald Roganti[1] brought this action because MetLife refused to treat the payment made in accordance with the Panel's Award as benefits eligible compensation.[2] A review of the arbitral record, Dudas' determination, Bernstein 1 and Bernstein 2, and the arguments advanced by counsel clearly demonstrate that the Panel intended for the Award to represent benefits eligible compensation. Bernstein 2 was rendered without reason and is not supported by substantial evidence. Accordingly, MetLife should properly adjust Roganti's retirement benefits, compensate him for the difference between what he received and should have received, and compensate him for his counsel fees.

### Roganti is Persona Non Grata

To this day, MetLife refuses to accept responsibility for the manner in which Roganti was treated in the last couple of years that he worked for the company. Roganti proved that MetLife retaliated against him for opposing unlawful and unethical conduct such as blood swapping and defending a female co-worker who was threatened by MetLife employees with physical violence. (AR 593-599, 603-604, ¶14-19). Despite that, MetLife refers to this as "alleged retaliation" in its Memorandum of Law. (MOL 27).

MetLife repeatedly takes pot shots at Roganti throughout its Memorandum of Law. By way of example, MetLife wrote: "…Roganti's adventures in speculation…" and "…this sort of unsubstantiated sniping is perhaps the best evidence of the vacuity of Roganti's arguments…" (MOL 32). The tone demonstrates a complete lack of respect for Roganti and the position that he

---

[1] "Roganti" is the Plaintiff; "MetLife" refers to the Defendants; the "Panel" refers to the Arbitrators; the "Award" refers to the Award given at the FINRA arbitration; "MOL" refers to MetLife's Opposition papers filed on May 1, 2013; "AR" refers to the Arbitral Record; and "Tr." refers to the transcript from the arbitration.
[2] Karen Dudas's determination is referred to as "Dudas" and Bernstein's determinations are referred to as "Bernstein 1" and "Bernstein 2."

has adopted in this proceeding. This evidences the personal nature of MetLife's position, its emotional involvement, and its continuing retaliation against Roganti.

### Conflicts of Interests

The issues raised by Roganti while working for MetLife, the retaliation, the issues addressed in the FINRA arbitration, the Award, and MetLife's response to Roganti's request to treat the Award as benefits eligible compensation all create conflicts of interests. There is the structural conflict of interest that exists whenever the plan administrator works for the company responsible to pay on the claim. Standing alone, that conflict would have to be viewed on a case by case basis. MetLife attempts to downplay the impact of $7,227,000 on the Pension Plan's overall liability stating it is only two-tenths of one percent. (MOL 26).

In addition, MetLife's perception and resentment of Roganti led to the decision to retaliate against him. MetLife has never apologized or expressed remorse for its wrongful actions against Roganti. Roganti's allegations and the ensuing arbitration involved senior executives including Robert Benmosche, who was the Chairman and CEO. (AR 1334-1372; Tr. 1717:3-1861:13; AR 2191; 2335). The nature of the issues and the size of the Award support the conclusion that actual conflicts of interests exist such that it would not be possible for a plan administrator employed by MetLife to make a clear and impartial determination. Andrew Bernstein admits that he is employed by MetLife. (Bernstein Decl. ¶2). He could not act impartially.

This matter differs greatly from the scenario in which a claimant challenges the denial of coverage under an insurance policy. MetLife was found to have retaliated against Roganti, a decorated employee,[3] after he exposed unethical and illegal conduct and refused to "take out" his co-worker. As a result, the conflict of interest is enhanced because of the retaliation and the

---

[3] Roganti was selected for membership in the MetLife Hall of Fame, recognized with MetLife's highest compliance award, the Award of Excellence and the Company Marketing Firm of the Year Award. (Rec. 2295, 2310- 2312, 2315 -2317, Exh. 18, 20-22, 25-26).

emotions that are at play. The accusations, issues raised, and resulting Award are extremely personal. (AR 593-616).

It is not clear what steps were taken by MetLife to insulate the process from any potential conflict of interest. (MOL 3, 28, 29). There is no reason to conclude that MetLife adopted active steps to insure that there was no conflict of interest.

### The Question

The central question is whether the Panel intended for all or some portion of the Award to be compensation for back pay. This Court remanded the matter to the Plan Administrator in order to determine what the Award represented. (AR 709) However, in Bernstein 2, Andrew Bernstein did not indicate what the Award represented. (AR 714-719). MetLife maintains that Roganti sought to recover back pay, front pay, lost benefits, liquidated damages, compensatory and punitive damages, counsel fees, litigation costs, and expert witness fees. (MOL 5, 21). The best way to begin the process would be to narrow the field of possible remedies available to Roganti. The Panel expressly rejected the claim for punitive damages. (AR 594). The Panel found MetLife to be responsible for the costs associated with the arbitration. (AR 595-596). It is not clear why MetLife references expert testimony because, as MetLife is well aware, Roganti did not have a pension expert testify. There could not have been an award of counsel fees because there was never any evidence presented in the form of testimony, affidavits or exhibits that reflected the amount time spent by counsel on the case or a reasonable basis for awarding fees. The only remaining possible remedies were for lost wages and pension benefits.

It was not possible for the Panel to quantify the impact of the retaliation on Roganti's pension because it did not have all of the necessary information. In fact, even MetLife's own actuary, Michael Bailey, said that he could not make the calculation using a regular calculator. (AR 1827-1828; Tr. 3169:14-3171:7). Moreover, Roganti did not ask that the Panel compensate

3

him for the impact of the reduction in his pension. Instead, Roganti's counsel requested that the Panel compensate Roganti for lost wages and that the adjustments to the pension be addressed by MetLife. (AR 2080; Tr. 3896:25-3897:2, 3897:7-11). It therefore stands to reason that no part of the Award was for the pension. The language "above its existing pension and benefit obligation" (AR 594) logically flows from this. Simply put, the Panel did not disturb the pension and the $2,492,442.07 was intended solely to compensate Roganti for lost wages. As requested by Roganti's counsel, the Panel awarded lost wages and deferred to MetLife to appropriately adjust the pension.

There is a responsibility for a finder of fact to avoid the appearance of impropriety. There is nothing in the record to suggest that MetLife made any effort to have a proper review of Roganti's claim.

### Michael Bailey

a. **MetLife's Representations**:

MetLife would have this Court believe that Michael Bailey testified over a two day period during which time he provided a detailed explanation of what constitutes benefits eligible compensation and that only compensation allocated to specific years could be considered benefits eligible compensation. These representations could lead to the conclusion that Bailey provided the Panel with very clear guidance on how to write an award using language that would entitle Roganti to a determination that it was benefits eligible compensation. In addition, MetLife would have this Court believe that Bailey's testimony gave complete guidance on how to quantify Roganti's pension. (MOL 2)

b. **The Record**:

Unfortunately, MetLife is incorrect on all counts. Bailey did not testify over a two day period. His testimony began after a recess that was taken at 9:58 am on August 9, 2010 and ended

4

at 11:32 am that same day. (AR 1819-1836). Bailey did not testify in detail about what constitutes "benefits-eligible compensation" as asserted by MetLife. Bailey neither stated nor made it clear that compensation can only be deemed "benefits-eligible" if it is allocated to specific years. (MOL 2, AR 1819-1836).

### c.  The Potential Harm:

MetLife's representations about Bailey's testimony, if accepted as true, would lead one to believe that Bailey provided extensive testimony over a two day period that very clearly described how to calculate a pension and how to write an award that would allow for the compensation to be treated as benefits eligible. Therefore, the Panel did not have the guidance as suggested by MetLife. Bailey's testimony, that lasted approximately 90 minutes, did not focus on these points. Furthermore, Bailey never addressed the language that would need to be in an award in order for it to be considered benefits eligible compensation.

### d.  Bailey Could Not Calculate the Pension:

Bailey did state:

But I do think that he would see an increase. You have a couple – without giving a real number, because I can't give an accurate one off the top of my head. Let me frame it. Again, I mentioned before, you have smaller accruals once you get above 35 years. And really, if –based on his final average pay, whatever the number used in that calculation was, if he only had pay at the higher level, that would effectively become his new final average pay. And so if you look at the difference in final average pay and that smaller accrual, that's what you're going to get.

\*\*\*

Well, it's not the type of thing that I can do, you know, kind of off the top of my head or kind of on the side of a piece of paper. I do need, you know - -  the process - - the calculation of determining basically the present value of an individual's benefit is not something that you do on a regular calculator. (AR 1827-1828; Tr. 3169:24-3171:4).

Bailey testified that there are lots of variables that need to be addressed in placing a value on the pension. (AR 1828; Tr. 3172:17-3173:13). Bailey could not calculate out the impact of a five percent a year pay increase. (AR 1832; Tr. 3186:10-18).

Bailey also admitted that he has not seen any managers at MetLife with monthly annuities equal to or great than Roganti's. (AR 1831-1832; Tr. 3185:21-3186:9).

### The Plan Documents

The record before this Court includes Plan Documents that were not part of the record from the arbitration. (AR 1-589). These documents were not offered as evidence at the arbitration, the Panel did not see the Plan Documents, and did not have access to the Plan Documents when drafting the Award. They were included because Bernstein had access to these documents when making the determination referred to as Bernstein 2.

### Potential Remedies

Roganti's counsel asked the Panel to compensate Roganti for back pay, front pay, punitive damages, costs for the arbitration, and counsel fees. (AR 2078, Tr. 3888:10-25). However, Roganti did not plead a cause of action for constructive discharge and MetLife's counsel correctly pointed out that Roganti would not be entitled to assert a claim for lost wages for any period of time after he left MetLife. (AR 600-616, 2113, 2124, Tr. 4030:6-12). Therefore, the absence of a claim for constructive discharge limits the lost wages to the period of time from when the retaliation began to when Roganti left MetLife in March 2005.

MetLife concedes that Roganti did not seek recovery for emotional damages. (MOL 5, 21). Roganti's request for punitive damages was denied. (AR 594). The record indicates that Roganti's counsel neither testified about counsel fees nor offered any documentation to support a claim for counsel fees. Notably absent are records of time spent by counsel as well as evidence necessary to establish an appropriate hourly rate for counsel. These are the types of documents that would be utilized in order to establish a Lodestar rate. Similarly, there is no evidence to suggest that MetLife offered any documentation opposing an application for counsel fees. Therefore, it would not be possible for the Panel to issue an award for counsel fees.

The Panel did order MetLife to pay the costs of the arbitration. (AR 595-596). Consequently, the only remaining avenues for relief are lost wages during the period of time that Roganti worked for MetLife and the harm to his pension. Roganti offered a chart showing the severe diminution of his income. (AR 2334).

MetLife expressed concern that an adjustment to the pension could lead to a double recovery if some portion of the Award was for the pension. (MOL 20). However, MetLife's fears should be eased because Roganti did not ask the Panel to issue compensation for the harm to his pension. Moreover, Bailey was unable to extrapolate an award without using a special calculator. (AR 1828). Therefore, it stands to reason that the Panel would not and could not take it upon themselves to nevertheless compensate Roganti for the harm to his pension. Further, no testimony or exhibits were offered that would allow for the Panel to make such a calculation to be able to make an award for lost retirement benefits. The Panel lacked a reason for making such an award as well as the ability to quantify it.

### Roganti Asked That MetLife Adjust the Pension

To the contrary, Roganti's counsel argued that the Panel should award back pay and that MetLife would then determine the appropriate pension. (AR 2080; Tr. 3896:25-3897:2, 3897:7-11). Roganti asked the Panel to award back pay which would be the basis for the change in the pension.

### Lost Wages

The only remaining remedy was for lost wages for the period ending in March, 2005. These remedies are calculated based upon the difference between what Roganti should have received and what he did receive. Roganti's counsel specifically requested that the counsel base lost wages on the difference between $1,506,000 and what Roganti actually received. (AR 2079; Tr. 3894:16-21). Roganti's counsel argued that the lost wages should continue seven years from

when he left MetLife. (AR 2080; Tr. 3897:18-24). However, due to the fact that the Claim did not

include a cause of action for constructive discharge, the Panel could not compensate Roganti for

lost wages after he left MetLife. (AR 2113;4030:6-14).

### MetLife Treated the Award as Benefits Eligible Compensation

MetLife provided Roganti with a Form 1099-Misc, for his arbitration Award, in which it

checked off Box 7 (Nonemployee compensation). IRS guidance regarding Box 7[4] provides:

"What is nonemployee compensation? If the following four conditions are met, you must

generally report a payment as nonemployee compensation.

- You made the payment to someone who is not your employee;
- You made the payment for services in the course of your trade or business (including government agencies and nonprofit organizations);
- You made the payment to an individual, partnership, estate, or, in some cases, a corporation; and
- You made payments to the payee of at least $600 during the year."

The second factor suggests that MetLife understood and even admitted that Roganti performed

services in the ordinary course of the business that he rendered.  If MetLife truly believed that the

payment was for retirement benefits then it could have provided Roganti with a 1099-R which is

the form that is used to report the distribution of retirement benefits.

In addition, MetLife treated the payment as compensation and not retirement benefits

because the payment came from a general account and not from a retirement account. Under

ERISA, assets are only properly payable from the plan(s) if they fulfill the requirements of

ERISA Section 404(a)(1), "...a fiduciary shall discharge his duties with respect to a plan solely in

the interest of the participants and beneficiaries and—(A) for the exclusive purpose of:  (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

of administering the plan." MetLife paid Roganti out of a general account and not from its

---

[4] IRS Instructions for Form 1099 MISC.

8

Retirement Accounts or from the plan(s). MetLife paid Roganti his award as compensation and also treated the award as compensation for tax purposes. MetLife did not pay the award from the Retirement Account(s) which are segregated for the purposes outlined above. There would have to have been some delineation in the award between compensation and benefits in order to have benefits payable from the Retirement Account. There was no such distinction, because no such distinction existed. The award was simply to make Roganti whole for lost wages during the time he was employed with MetLife. Moreover, the award states "above the existing pension obligation."  This is consistent with the entirety of the award being treated as earnings which would further enhance Roganti's pension and therefore make him whole.

Charging the arbitrators with knowledge of law, they would have to have made the distinction between award amounts that represented compensation and those amounts that were retirement benefits. As stated above, this is because benefits have to be clearly labeled as such to be paid from the retirement accounts, which is the source from which Roganti and all his fellow plan participants receive their benefits.   Furthermore, it is clear that Roganti would lose out on the tax benefits associated with retirement benefit assets.   Consequently, the silence of the arbitrators with respect to distinguishing between compensation and benefits can only mean that it was their intention that the FINRA award represents compensation.

## ARGUMENT

### POINT I

### THE APPROPRIATE STANDARD

This is a unique fact pattern in which there are multiple conflicts of interests that have a significant impact on the ability of the Plan Administrators to perform their functions in an

impartial manner. In *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130-31 (2d Cir. 2008), the Second Circuit held:

> And we squarely held in Pulvers v. First UNUM Life Insurance Co., 210 F.3d 89, 92 (2d Cir.2000), that the arbitrary and capricious standard continues to apply when the only evidence of a conflict of interest is that an insurer acts as both adjudicator and payor of claims. Read together then, our case law made clear that the arbitrary and capricious standard applies "unless the [plaintiff] can show not only that a potential conflict of interest exists, ... but that the conflict affected the reasonableness of the [administrator's] decision." Sullivan, 82 F.3d at 1259 (internal quotation marks omitted). However, upon a showing that "the conflict affected the choice of a reasonable interpretation," the court interprets the plan de novo. Id. at 1255.

Roganti has advanced significant evidence that Bernstein's interpretation of the Panel's intent was affected by the conflicts of interests. In Bernstein 2, MetLife gives no recognition to counsel's arguments in the summation or what Roganti asked of the Panel. To the contrary, he painstakingly sought to justify his determination.

### a. Bernstein's Reasoning is Flawed:

This Court asked the Plan Administrator to consider the arguments made by counsel at the arbitration. Bernstein totally missed counsel's arguments when he wrote:

> In reviewing the arbitration transcripts and exhibits, neither Roganti nor MetLife ever made an argument that the arbitration panel did not have jurisdiction to hear the claims for benefits under the Pension Plans and SIP Plans. In fact, based upon the opening arguments by Roganti's counsel,[3] testimony elicited during the arbitration proceeding[4] and the closing arguments,[5] it is clear that these issues were raised by the parties and fully covered during the arbitration proceeding. In point of fact, MetLife had its internal pension expert, Michael Bailey, Vice President and internal actuary for the plans, testify about the pension calculation and the value of Roganti's pension claims.[6] In light of the extensive testimony from Roganti and MetLife, as well as Roganti's claim for relief which specifically requests back pay and additional pension benefits, it certainly appears clear that the arbitration panel fully considered these arguments when they decided the matter and did not award Roganti back pay or any benefit eligible compensation under the terms of the Pension Plans and SIP Plans. (AR 715-716).

Bernstein missed Roganti's request for damages in summation and significantly overstated the ability of the Panel to quantify pension related damages based upon Bailey's testimony.

Importantly, Bernstein overlooked Bailey's testimony that he could not calculate the pension with an ordinary calculator and that there were many variables used in the calculation thereof.

Bernstein did not address Roganti's request that the Panel credit him with lost wages based upon the difference between $1,506,000 and the amount earned. Bernstein should have recognized and incorporated his employer's argument that Roganti left in March of 2005 and did not assert a claim for constructive discharge. Therefore, there could be no lost wages after March 2005. Bernstein did not mention the fact that Roganti's counsel specifically requested that the Panel focus on lost wages and leave adjustments to the pension and benefits to MetLife. Had he done this, Bernstein would have concluded that the Panel intended that the Award to constitute back pay.

Bernstein asserts that there was ample testimony to allow for the Panel to quantify the pension. (AR 715 - 716). Bernstein's citations only demonstrate that the Panel had an overview of how the Plans work and the ability to roughly approximate the impact of a reduction in income on the pension. This is inadequate information for the Panel to quantify the harm. Indeed, Bernstein refers to Bailey as MetLife's own expert. Bailey could not quantify pension damages when he testified. Once again, Bernstein chose not to credit Roganti's request for relief in his counsel's summation.

**b. Bernstein's Bias:**

Bernstein openly admits that he was privy to arguments advanced by counsel in the instant lawsuit. (AR 715). MetLife even asserts that there is nothing wrong with Bernstein discussing the defense of this action with his legal counsel. (MOL 30). This defeats the assertion that a "wall" existed between Bernstein and MetLife. MetLife had both the motive and means to ensure that Bernstein denied Roganti's claim. MetLife still has not demonstrated remorse for its treatment of Roganti.

11

**c.  The Only Plausible Conclusion:**

Roganti asked the Panel to compensate him for lost wages and to have MetLife adjust the pension based upon the additional income. It makes no sense to conclude that the Panel would give Roganti something that he did not request. Moreover, the Panel lacked the necessary information in order to quantify the impact on the pension.

**d.  Bernstein's Declaration:**

Bernstein's Declaration should not be considered because it is self-serving and there has been no opportunity to examine him. Moreover, while Bernstein asserts that he does not take guidance from finance employees or have any association with business lines, MetLife concedes that Bernstein may communicate with his defense counsel. (MOL 29-31).

## POINT II

## ARBITRARY AND CAPRICIOUS

Even under the arbitrary and capricious standard MetLife's determination (Bernstein 2) should be overturned and the entire Award should be treated as benefits eligible compensation.

Under the arbitrary and capricious standard:

> The court may reverse only if the fiduciary's decision was arbitrary and capricious, that is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir.1995) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir.1993)). *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995).

In *Fairbaugh v. Life Ins. Co. of N. Am.*, 737 F. Supp. 2d 68, 81 (D. Conn. 2010), the Court held:

> While the arbitrary and capricious standard of review is deferential, "[t]he [plan administrator] must articulate a rational connection between the facts found and the choice made." Sisavang Danouvong v. Life Ins. Co. of N. Am., 659 F.Supp.2d 318, 324 (D.Conn.2009), quoting Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

In *Alberigo v. Hartford*, 891 F. Supp. 2d 383, 395 (E.D.N.Y. 2012), the Court found:

> Substantial evidence ... is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance" of evidence. Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir.1995).

Bernstein does not articulate a rational connection between the facts and the decision. Instead, he attempts to manipulate facts to support his conclusion while completely overlooking facts that clearly support the opposite position. The *Fairbaugh* Court found:

> It was arbitrary and capricious of Defendant to disregard this evidence in the record that Plaintiff's regular occupation was stressful, required multi-tasking and adherence to deadlines, and involved more than occasional travel. Such evidence supported and bolstered the reasonableness of her doctor's conclusion that she could not continue to perform her regular occupation in light of the limitations imposed by her multiple sclerosis. *Id.*, at 86.

MetLife's denial was arbitrary and capricious and the remand would be futile.[5]

## **POINT III**

### **COUNSEL FEES**

Roganti advances an important issue while exposing MetLife's patent refusal to take responsibility for having retaliated against him. Importantly, one of the initial reasons for denying Roganti's claim was that he was not employed by MetLife at the time that the Panel rendered its Award. This creates a frightening precedent that no former employee who succeeds on a wrongful termination or constructive discharge case can ever be made whole. Indeed, the employee may be able to recover lost wages. An employee would never obtain the retirement benefits that the employee should have enjoyed but for the wrongful termination.

Roganti does not need to be a "prevailing party" in order to be entitled to an award of counsel fees.

---

[5] While we conclude that the plan administrator's decision was arbitrary and capricious, we do not find that, under the circumstances of this case, it is appropriate for the district court to direct the plan administrator to reconsider Zuckerbrod's claim. *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 (2d Cir. 1996).

The Second Circuit has directed district courts to consider five factors when evaluating a
request for attorneys' fees and costs:
(1) the degree of the offending party's culpability or bad faith, (2) the ability of the
offending party to satisfy an award of attorney's fees, (3) whether an award of fees would
deter other persons from acting similarly under like circumstances, (4) the relative merits
of the parties' positions, and (5) whether the action conferred a common benefit on a group
of pension plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan,* 815
F.2d 869, 871 (2d Cir.1987)).

Roganti has demonstrated, among other things, bad faith. In *Hardt v. Reliance Standard Life Ins.*

*Co.*, 560 U.S. 242, 130 S. Ct. 2149, 2156, 176 L. Ed. 2d 998 (2010), the Supreme Court held:

We see no reason to dwell any longer on this question, particularly given Reliance's
concessions. See Brief for Respondent 9–10 ("On its face," § 1132(g)(1) "does not
expressly demand, like so many statutes, that a claimant be a 'prevailing party' before
receiving attorney's fees"). We therefore hold that a fee claimant need not be a "prevailing
party" to be eligible for an attorney's fees award under § 1132(g)(1).

The Court then found that counsel fees should be awarded:

Hardt persuaded the District Court to find that "the plan administrator has failed to comply
with the ERISA guidelines" and "that Ms. Hardt did not get the kind of review to which
she was entitled under applicable law." App. to Pet. for Cert. 48a; see 29 U.S.C. §
1133(2), 29 CFR § 2560.503–1(h) (2009). Although Hardt failed to win summary
judgment on her benefits claim, the District Court nevertheless found "compelling
evidence that Ms. Hardt is totally disabled due to her neuropathy," and stated that it was
"inclined to rule in Ms. Hardt's favor" on her benefits claim, but declined to do so before
"first giving Reliance the chance to address the deficiencies in its" statutorily mandated
"full and fair review" of that claim. App. to Pet. for  *2159 Cert. 48a; 29 U.S.C. §
1133(2). Hardt thus obtained a judicial order instructing Reliance "to act on Ms. Hardt's
application by adequately considering all the evidence" within 30 days; "[o]therwise,
judgment will be issued in favor of Ms. Hardt." App. to Pet. for Cert. 49a. After Reliance
conducted that court-ordered review, and consistent with the District Court's appraisal,
Reliance reversed its decision and awarded Hardt the benefits she sought. App. 120a–
123a.
These facts establish that Hardt has achieved far more than "trivial success on the merits"
or a "purely procedural victory." Accordingly, she has achieved "some success on the
merits," and the District Court properly exercised its discretion to award Hardt attorney's
fees in this case. *Id.,* at 2158-59.

Given that this matter involves retaliation, a failure to take ownership for its actions, the

relative merits of Roganti's claims and the risk that MetLife could take similar action against

other employees who succeed in employment law claims, counsel fees are appropriate.

14

## CONCLUSION

Roganti has established that:

- The Plan Administrator acted under an actual conflicts of interests;
- The conflicts of interests impacted decisions that he made;
- The Panel concluded that MetLife retaliated against Roganti;
- The diminution of income and the years in which the retaliation took place overlap. (AR 2334);
- Roganti has demonstrated that the Panel intended for the Award to be benefits eligible compensation under both the "de novo" and "arbitrary and capricious" standards;
- Roganti asked the Panel to issue an award for lost wages and defer to MetLife to properly adjust the pension and other benefits accordingly;
- MetLife never demonstrated what the Award represents;
- Roganti provided this Court with a formula and an extremely accurate figure;
- Remand to the Plan Administrator to determine the Panel's intent would be futile;
- Roganti is therefore entitled to be made whole which requires that the Panel's Award be added to Roganti's best five years (1997-2002) as they currently exist and on which his pension is presently based. This is consistent with the Panels' Award "above its existing pension and benefit obligation…";
- MetLife should adjust Roganti's pension and all other benefits to reflect this income;
- MetLife should also pay the difference between what Roganti received and should have received from 2005 to present with statutory interest at 9%;
- Grant Roganti leave to file an application for counsel fees; and
- To grant such other and further relief as to this Court deems just and proper.

Dated: Boston, Massachusetts
May 15, 2013

Yours,

David G. Gabor (DGG 9979)

## CERTIFICATE OF SERVICE

I, DAVID G. GABOR, hereby certify and affirm that a true and correct copy of the attached **PLAINTIFF'S MEMORANDUM OF LAW IN REPLY** was served via ECF, electronic mail, and U.S. Mail on this 15th day of May, 2013, upon the following:

Michael H. Bernstein, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
michael.bernstein@sedgwicklaw.com


_____
DAVID G. GABOR


Dated:          Boston, Massachusetts
                May 15, 2013