ATTORNEYS AT LAW

225 LIBERTY STREET, 28TH FLOOR   NEW YORK, NY   10281-1008

*www.sedgwicklaw.com*   212.422.0202 *phone*   212.422.0925 *fax*



*Michael H. Bernstein*
*(212) 898-4011*
*michael.bernstein@sedgwicklaw.com*

November 8, 2013

*Via E-mail*
Hon. Paul A. Engelmayer, U. S. D. J.
United States District Court
Southern District of New York
500 Pearl Street, Room 670
New York, NY  10007

Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
    File No.: 00584-007694

Dear Judge Engelmayer:

This office represents the defendants.  We respectfully submit this letter in accord with the Court's Order dated September 25, 2013, ordering that the parties submit a joint letter identifying any remaining issues in the action.  Below are the respective positions of the parties as to any remaining issues:

## I.        Plaintiff's Position

This portion of the letter is written in furtherance of the Court's Opinion and Order dated September 25, 2013 (Opinion). Due to the fact that it has been determined that the Award represented benefits eligible compensation, adjustments should be made to Roganti's Pension, Savings and Investment Plan (SIP), and Additional Vacation Compensation (AVC). Finally, Roganti should be entitled to pre-judgment interest. It is respectfully requested that the Court issue an Order requesting the information necessary to enter a judgment regarding the Pension, SIP, and AVC with interest.

### A.  <u>Introduction</u>

The parties have discussed the open issues. MetLife issued a letter dated October 29, 2013 which included calculations and adjustments for Roganti's Pension and SIP. MetLife did not waive its rights to

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
   Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 2

appeal and did not indicate that payments would be forthcoming. MetLife factored interest into its adjusted figures. Unfortunately, MetLife failed to properly adjust the Pension and the SIP because it did not treat AVC as benefits eligible compensation. MetLife also failed and refused to provide calculations and adjustments to the AVC paid to Roganti in 2005.

Throughout this litigation Roganti has sought to be made whole. Treatment of the Award as backpay and benefits eligible compensation impacts the above mentioned benefits. MetLife must now adjust those benefits consistent with the terms of its plans and the law of this case. MetLife should also treat Roganti in the same manner as if he received this income between 2003 and 2005. In short, the only way to make Roganti whole is for him to receive the same benefits that he would have received had he not been the victim of adverse employment. To that end, Roganti simply asks that MetLife adjust his benefits accordingly.

MetLife created its Pension, SIP, and AVC Plans in an effort to reward its longtime employees for years of service. The Pension and SIP Plans treat AVC as benefits eligible compensation. As is set forth below, the first item used in describing benefits eligible compensation is AVC. The Pension Plan also provides that the final pension is based on Roganti's best five years of benefits eligible compensation. Due to the fact that AVC is benefits eligible compensation, MetLife should have engaged in a two-step process. MetLife was required to determine the amount of benefits eligible compensation that Roganti received in 2005. MetLife must then determine whether 2005 became one of his five best years. Logic dictated that it would be impossible to identify Roganti's five best years without first treating AVC as part of Roganti's benefits eligible compensation for 2005.

MetLife made it clear that, absent direction from this Court, it will not adjust the AVC and therefore will not properly adjust the Pension or the SIP. Accordingly, Roganti will not receive the proper benefits under MetLife's Pension and SIP Plans. Moreover, Roganti will not receive all of the AVC as provided for in the AVC Plan. As a result, it is necessary to respectfully request that this Court issue an Order as follows:

a) Directing that MetLife produce a copy of the AVC, Vacation, and PTO Plans that were in effect for Roganti on March 1, 2005;

b) Directing that MetLife produce appropriate documents confirming the amount of vacation that Roganti accrued (from his date of hire through his last day of employment with MetLife in 2005);

c) Directing that MetLife calculate the adjusted AVC for Roganti based upon the AVC Plan, his accrued vacation and his adjusted backpay as set forth in the Opinion;

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
   Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 3

   d)  Directing that MetLife confirm the amount of AVC issued to Roganti in 2005 together with the supporting calculation;
   e)  Directing that MetLife identify Roganti's five best years after adjusting his benefits eligible compensation for 2005 to include his adjusted AVC, the compensation that he received, and his adjusted backpay;
   f)  Directing that MetLife calculate Roganti's Pension based upon his best five years and provide the appropriate methodology;
   g)  Declaring that AVC is benefits eligible compensation as defined by the Plans;
   h)  Directing that MetLife pay the difference between the AVC/Vacation Compensation that Roganti received and the AVC/Vacation Compensation that Roganti should have received based upon the Opinion;
   i)  Directing that MetLife adjust the SIP by including AVC as benefits eligible compensation; and
   j)  Awarding interest as more fully described below.

   ## B.  MetLife's Plans

   When MetLife prepared its retirement plans (Pension and SIP) it included AVC as part of its definition of benefits eligible compensation (Joint Statement of Facts ¶8 Section 1.05(b)1), ¶10(b)1 *See also* Michael Bernstein's Declaration dated March 19, 2012, Exhibits C and E). The language is plain and unambiguous. AVC is benefits eligible compensation. MetLife intended for an employee to be able to add accrued vacation to benefits eligible compensation for the final year of employment. Therefore, benefits eligible compensation includes AVC. There is no other way to interpret the language in MetLife's Pension Plan. The Plan provides that the pension is based on a formula that is applied to an employee's five best years of benefits eligible compensation.

   ## C.  MetLife Failed to Follow the Plans

   MetLife adjusted Roganti's total income for 2003 and 2004 based on the Opinion. MetLife recognized that Roganti's compensation was adjusted for those years. However, MetLife did not do what was necessary to adjust 2005. The first step in the two-step process requires that MetLife identify all benefits eligible compensation for 2005. That would require calculating the corrected AVC based upon the adjusted income for 2004 and the first three months of 2005. The mandatory next step would be for MetLife to adjust the AVC consistent with its Plans and this Opinion. MetLife is mandated to adhere to the terms of its Plans. That requires adjusting Roganti's benefits eligible compensation (adjusted backpay, compensation received and AVC). MetLife could not properly get to the second step which is the identification of Roganti's five best years without completing the first step.

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
　　Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 4

We asked MetLife to calculate Roganti's AVC based upon the Opinion because we believe that 2005 would become one of his five best years. It is reasonable and appropriate to request that MetLife calculate the Pension consistent with the terms of its Plans. This would ensure that Roganti receives his proper benefits. In fact, even if we were wrong and 2005 is not one of the best five years, we have every right to review the AVC Plan and supporting data.

**D.  Roganti's SIP**

Roganti's SIP is also tied into his benefits eligible compensation. The SIP Plan provides that AVC is treated as benefits eligible compensation. Therefore, it is necessary to review the impact of AVC on the SIP.

**E.  Roganti's Additional Vacation Compensation/Vacation Pay**

When Roganti submitted his request for an adjustment to his benefits to MetLife at the conclusion of the Arbitration it included a request for compensation for accrued benefits.  Karen Dudas indicated that her department did not handle issues regarding payroll practices. "An officer of MetLife with knowledge of the PTO program will respond to you under separate cover addressing that portion of your request." (Joint Statement of Facts at ¶28). In his letter dated August 30, 2011, Andrew Bernstein also refused to address the claim for paid time off. After receipt of the Opinion Roganti requested that MetLife pay the difference between AVC that he received and AVC that he should have received. Roganti only asks that MetLife treat him the same as other employees.

As stated above, it is necessary to calculate the AVC in order to calculate the Pension and the SIP. Therefore, MetLife has to calculate AVC to the satisfaction of this Court regardless of whether this Court Orders that MetLife pay AVC that is due and owing.

Accrued vacation is a benefit that was impacted by the events that transpired in the years preceding the end of Roganti's employment and is a benefit that he is entitled to under MetLife's benefit plans. Absent an Order of this Court, it appears that MetLife will not honor this obligation.

**F.  Interest**

In MetLife's letter it proposes applying interest to the Pension and SIP by using a variable interest rate retroactive to 2005. While Roganti understands this approach, it amounts to incomplete relief because New York provides that an interest rate of 9% applies and is the appropriate interest rate (C.P.L.R. §5004). It is therefore respectfully requested that the Court order in the case of AVC/Vacation Compensation, the adjusted AVC/Vacation Compensation benefit be paid with interest of 9% from the

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 5

date that the incorrect amount was paid to Roganti. This benefit sum is paid to Met Life employees in a lump sum amount different than the pension and the SIP.

It is recognized that in a recent Eastern District case Judge Gershon addressed the application of interest to monthly payments. *Kalloo v. Unlimited Mechanical Co. of NY, Inc.*, 11-CV-6215 NG RLM, 2013 WL 5574774 (E.D.N.Y. October 10, 2013).

When damages were incurred over a period of time, interest may be calculated from "the date [damages were] incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Plaintiffs have calculated the midpoint of Mr. Kalloo's employment as November 23, 2010, which is a reasonable intermediate date. Likewise, the midpoint of Mr. Albertie's employment is December 8, 2007, and the midpoint of Mr. Mohammad's employment is November 28, 2007.

\*\*\*\*\*

Prejudgment interest on the NYLL claims of nine percent on the principal amount of $9,076.02 accrues from November 28, 2007, through the date of the entry of Judgment.

MetLife has made Pension payments to Roganti on a monthly basis. Although it is verily believed that it is not necessary to adopt this approach to the Pension, it is possible to identify a midpoint between the first payment and the most recent payment. MetLife has been making pension payments to Roganti for 103 months. A midpoint would be approximately 52 months from when Roganti's employment with MetLife ended. Therefore, the interest should be assessed from approximately July 2009 at 9%. This is a fair and reasoned fallback position.

### G. Conclusion

Roganti had hoped that MetLife would address all of the open issues as described in this letter. While it is understood that it is within MetLife's right to appeal, it is in everyone's best interest to properly calculate Roganti's damages. We are not seeking to cause MetLife to waive any of its rights. At the same time, MetLife should properly exercise its obligation to calculate all of Roganti's benefits (Pension, SIP, and AVC) using the proper benefits eligible compensation and the Opinion.

All that we are asking is for the proper calculations to be made so that we can be assured that the adjustments made to the three benefits are correct based upon the language in the Plans, the law of the case and the indisputable facts. It is unfortunate that it has become necessary to have to request that the Court Order that MetLife calculate the damages consistent with the terms of any of the Plans. We continue to do our best to bring this matter to a just and proper conclusion.

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 6


## II.    Defendants' Position

The only remaining issues that exist are raised by Plaintiff, Ronald Roganti ("Roganti"). MetLife has calculated the increased pension benefits under Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.*, as amended ("ERISA") that Roganti is entitled to receive under the Court's September 25, 2013 Order.  On October 29, 2013, we sent Roganti's counsel the calculations that take into the account the amounts awarded by the district court in its September 25, 2013 Order. Roganti agrees with the calculations, except for two points:  (1) he argues that the pension calculations should include what he (mistakenly) refers to as "Additional Vacation Compensation" ("AVC"); and (2) he argues for a higher interest rate.  We disagree for multiple reasons.

### A.    Roganti's Claim For AVC And For It To Be Included in His Pension Calculations Is Incorrect

#### 1.    Roganti's Claim that Revised "AVC" Figures should be Taken Into Account in Calculating His Pension

##### a.    Roganti Wants to Recalculate His Post-Retirement <u>Vacation Pay</u>

While employed by MetLife, Roganti accrued vacation days, which technically are called "PTO days" ("PTO" stands for "Paid Time Off").  In some years, he used less than all of those PTO days. Under MetLife's PTO policy, when Roganti retired, he was entitled to be paid for accrued but unused PTO days (subject to certain caps).  Accordingly, in 2005, MetLife paid him **$417,190** for those unused days.  In this letter, we will use the colloquial term **"vacation pay"** to describe this lump sum payment. Roganti's vacation pay actually was divided into two subsets, each of which was calculated differently:

| | |
|---|---|
| **"Bank"** of unused vacation days (accrued *before* 2001): | $ 317,714 |
| Unused PTO days (accrued on or *after* Jan. 1, 2001): | $  99,476 |
| | ———— |
| Total vacation pay: | $ 417,190 |

(Ex. "A").

● **"Banked" Vacation Days (pre-2001)**.  Under MetLife's published rules, vacation days that Roganti "banked" <u>before</u> 2001 were paid out at his rate of pay that was in effect during the year in which each day was accrued.● **Unused PTO Days (after 2001)**.  Under MetLife's rules, unused PTO days that Roganti accrued <u>after</u> January 1, 2001 were treated differently.   These unused PTO days were

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 7


capped (at a maximum of 50 days), unlike the pre-2001 days, which were uncapped.  Further, these unused PTO days were paid out based upon Roganti's management pay rate *at the time of termination* (i.e., an average of the management pay he received during his last 52 active weeks of service).

How the Arbitration Award Potentially Affects These Vacation Pay Calculations:  This Court's Opinion has construed the arbitration Award as back pay for the years 2003, 2004, and 2005.  Because none of the Award constitutes back pay for years prior to 2001, the Award cannot possibly change the vacation pay calculation for days in Roganti's pre-2001 "Bank."

However, *if* MetLife were required to recalculate Roganti's vacation pay (8 years after the fact), the back pay award would affect the payment for unused PTO days that accrued <u>after</u> 2001 (because it would increase his management pay during his final 52 weeks of active service).  The following chart shows what effect this would have (it adds $182,000 to the second component of his vacation pay):

|  | Actually Paid | Revised Calculation based on Back Pay |
|---|---|---|
| "Banked" vacation days (accrued *before* 2001): | $ 317,714 | $ 317,714 |
| PTO days (accrued on or *after* Jan. 1, 2001): | $  99,476 | **$ 281,539** |
| Total vacation pay: | $ 417,190 | $ 599,253 |

AR590-99;[1] Ex. "A").

## b.    AVC vs. Vacation Pay:  They are Completely Different Things

Roganti and his attorneys are misusing the term "Additional Vacation Compensation," which is a term of art at MetLife (that is why the initial letters are capitalized).  Specifically, they have confused AVC with vacation pay, erroneously treating the two terms as synonyms.  In reality, AVC and vacation pay are two completely different things.

**Vacation pay** (also called PTO pay) refers to a one-time, *post-employment* payout, made shortly after someone's employment ends, to compensate that person for *unused* vacation days.  The $417,000 payment Roganti received in 2005, shortly after he retired, was vacation pay. By contrast, **AVC** refers to a rare, salary-like payment which occasionally is made to a salesperson *while he is on vacation*.

---

[1] Citations to ("AR__") refer to the stipulated Administrative Record filed by the parties January 18, 2013. (Doc. No. 31, 32).

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
　　Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 8


　　Despite Roganti's misuse of the term "AVC," the benefit he really seeks to have recalculated is his vacation pay, not AVC.  The specific payment he challenges is the $417,000 lump sum that was paid to him in 2005, shortly after he retired.  (*Supra*, p. 2) (all of Roganti's requests focus on the payment he received "in **2005**") AR 590-99).

　　The lump sum payment he received in 2005, shortly after retiring, was vacation pay.  Indeed, Roganti was not eligible for AVC, so he *never* received AVC (at least not since 1978, when he became a manager).  AVC is a discontinued legacy item from many years ago.  No one hired during the past 25 years has been eligible for AVC.  By 2005, it was only available to a limited number of MetLife sales employees.  To be eligible, an individual:  (a) must have been hired before August 1987; (b) must be employed as an Financial Services Representatives ("FSR") or as a Functional Manager ("FM") during his vacation week; and (c) must meet certain production requirements during that year.  Roganti was not employed as an FSR or as a FM during the years at issue and, as such, did not receive and was not eligible for AVC.

### 2.　　Recalculating Roganti's Vacation Pay Cannot Change His Pension Benefit

　　Roganti demands that MetLife recalculate his vacation pay (by taking into account back pay), in order to ensure that his pension was accurately calculated.　However, for at least two reasons, recalculating his vacation pay cannot possibly change his pension benefit.　First, under MetLife's ERISA plans, vacation pay does *not count* in calculating pensions.　Roganti's contrary view rests solely on his mistaken belief that vacation pay and AVC are the same thing.　Second, in calculating Roganti's pension benefit, only his highest five years of income are relevant.

　　For purposes of his Auxiliary pension benefit, 2005 is nowhere close to being one of his highest five years, even with "revised" vacation pay figures and for purposes of his qualified pension benefit, no additional compensation could be considered in 2005 since his eligible pay is already at the maximum amount allowed under IRC 401(a)(17) (the eligible compensation amount).

### a.　　Unlike AVC, Vacation Pay does Not Count for Pension Purposes

　　Under MetLife's ERISA plans, when pension benefits are calculated, **vacation pay** does *not* count.  Vacation pay is not paid until after termination of employment, by which time the individual is no longer an "active" employee.　Nothing in MetLife's pension plans have ever suggested that vacation pay counts when calculating pension benefits.  To the contrary, the plan provisions on which Roganti relies, which contain the definition of "Compensation," *omit* vacation pay from the list of items that count. The list includes AVC, but not vacation pay. Additionally, as discussed above, Roganti was not eligible for AVC.

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 9


"Additional Vacation Compensation" ("**AVC**"), by contrast, does count for pension purposes. As discussed above, AVC is a salary-like payment made <u>during the week</u> in which a salesperson takes his vacation.  Because AVC is paid while the salesperson is still actively employed, AVC counts for pension purposes.

> **b.**  **Even If Vacation Pay "Counted," It Still would Not Affect Roganti's Pension Benefit, Because 2005 would Still <u>Not</u> be One of His "Highest Five Years"**

Roganti received 100% of his vacation pay in 2005, shortly following his retirement.  Thus, if his vacation pay were recalculated, it could only affect his 2005 income.  He only worked a couple of months in 2005, before retiring, so 2005 has no chance of being one of his "highest 5 years" for auxiliary plan purposes; i.e., no chance of counting for pension purposes.  Roganti concedes that MetLife *may* be correct about this point:

> We have asked MetLife to calculate Roganti's AVC based upon the Opinion because we believe that 2005 would become one of his five best years [when the recalculated vacation pay is added to his 2005 income]....  [But] even if we were wrong and 2005 is [still] not one of the best five years, we have every right to review the ... supporting data.

(Roganti's statement in this letter, p. 3).  In response to Roganti's demand, MetLife has performed the requested recalculation.  That exercise confirmed the obvious:  2005 still comes *nowhere close* to counting as one of his highest five years.  Here is the data, after adding $599,000 in vacation pay to his 2005 income:

| Year | Countable Income: Without Back Pay | With Back Pay | **With Both Back Pay & Recalculated Vacation Pay** |
|------|------|------|------|
| 2001 | $ 2,006,000 | $ 2,006,000 | $ 2,006,000 |
| 2002 | $ 1,506,000 | $ 1,506,000 | $ 1,506,000 |
| 2003 | $   475,000 | $ 1,506,000 | $ 1,506,000 |
| 2004 | $   477,000 | $ 1,506,000 | $ 1,506,000 |
| 2000 | $ 1,406,000 | $ 1,406,000 | $ 1,406,000 |
| 2005 | $   140,000 | $   405,000 | **$ 1,004,000** |

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 10


This chart should end the discussion.  Even if vacation pay is counted and recalculated, 2005 still falls approximately <u>$400,000 short</u> of being one of Roganti's highest five years.  As a result, recalculating his vacation pay cannot possibly change his pension benefit.  With regard to qualified pension benefits, 2005 is used to calculate such benefit, but since Roganti's pay for 2005 is already at the allowable IRS limit, no other compensation can be considered.

> **3.    Roganti's Attempt to Add a <u>Breach of Contract Claim,</u> and to Recover Damages for an Alleged Underpayment of Vacation Pay**

In this letter, Roganti raises two distinct issues, both involving vacation pay.  <u>First</u>, as discussed above, he asks to have his vacation pay recalculated (based on back pay), hoping that the revised figure would increase his pension benefit.  That theory is misguided, but at least it falls within the scope of his ERISA claim (i.e., it relates to calculating his pension benefit).

His <u>second</u> request, however, is completely unrelated to his ERISA claim – the only remaining claim he asserted in this lawsuit that survived MetLife's motion to dismiss and the only claim that was the subject of the summary trial on the stipulated factual record.  Now, for the first time, he is asking this Court to award him damages for underpayment of vacation pay:

> [Roganti requests that this Court enter an Order] [d]irecting that MetLife pay the difference between the [vacation pay] that Roganti received and the [vacation pay] that Roganti should have received based upon the Opinion [i.e., if back pay had been taken into account in calculating his vacation pay].

This second request has nothing to do with the ERISA claim, because vacation pay is not governed by an ERISA plan.  Instead, to pursue a claim that his vacation pay was miscalculated, Roganti would need to assert a <u>breach of contract claim</u> under New York state law.  No such claim was pled, so in effect, he is seeking leave to amend his Complaint after trial.

This Court should deny this untimely request for the reasons set forth below:

> **a.    Vacation Pay Falls Outside the Scope of Roganti's ERISA Claim**

The $417,000 vacation pay payment that Roganti received in 2005 was *not* made under any of the ERISA plans.  Rather, MetLife made this lump sum payment from its general assets, because it administers vacation pay as part of its routine payroll practices (i.e., the same way as it administers everyone's bi-weekly paychecks), not as part of any ERISA plan.  Two years ago, when Roganti

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 11


submitted his vacation pay calculation request to an ERISA plan administrator, the plan administrator replied by explaining to him that vacation pay is not covered by any of MetLife's ERISA plans. *E.g.*, (AR 621)

    The conclusion that vacation pay is not governed by ERISA is hardly unique to MetLife. Both the United States Supreme Court and the U.S. Secretary of Labor have reached the same conclusion:

> [According to regulations promulgated by the Secretary of Labor,] [p]aid vacations . . . are not treated as employee benefit plans because they are associated with regular wages or salary, rather than benefits triggered by contingencies such as hospitalization. [We agree].

> \* \* \*

> A contrary interpretation, including routine vacation pay policies within ERISA, would have profound consequences. Most employers in the United States provide some type of vacation benefit to their employees. ERISA coverage would put all these employers to the choice of complying with the statute's detailed requirements for reporting and disclosure or discontinuing the practice of compensating employees for unused vacation time. In addition, the extension of ERISA to claims for vacation benefits would vastly expand the jurisdiction of the federal courts, providing a federal forum for any employee with a vacation grievance.

> \* \* \*

> [T]he reasons for treating holiday and weekend premiums and payments of compensation while an employee is on vacation as "payroll practices" [rather than as ERISA plans] are equally applicable to the payment of [vacation pay] for accrued and unused vacation time upon discharge.

*Massachusetts* v. *Morash*, 490 U.S. 107, 117, 118, 119 (1989). *See also Capriccioso* v. Henry Ford *Health Systems*, 225 F.3d 658 (6th Cir. 2000)("Benefits paid from an employer's general assets do not constitute an employee welfare benefit plan under ERISA but instead are considered 'payroll practices' not regulated by ERISA").

    Accordingly, Roganti's belated claim for vacation pay cannot be considered part of his ERISA claim. Any claim for vacation pay would necessarily arise under New York state law, not under ERISA. *See Kolesnikow* v. *Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 120 (S.D.N.Y. 2009) (referencing N.Y. Labor Law in determining whether a claim for vacation pay exists).

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
   Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 12


### b.    Roganti Never Pled or Pursued a Breach of Contract Claim for Vacation Pay

To the extent Roganti arguably might have had any claim for breach of contract, based on an alleged underpayment of his vacation pay, he waived it by failing to plead or pursue it in this lawsuit. The Complaint in this case asserted three claims.

(1) a SOX claim:  allegedly denying pension benefits to punish Roganti for whistleblowing;

(2) a Dodd-Frank claim:  the same legal theory as the SOX claim; and

(3) a claim under §502(a)(1)(B) of ERISA: seeking to recalculate his monthly pension benefit.

All of those claims arose under specific federal statutes, not under state law.  Further, none of those claims was for breach of contract.  Likewise, the Complaint never mentioned anything about an alleged underpayment of *vacation pay*.  All three claims, as pled, focused solely on Roganti's *pension* benefits.

Similarly, Roganti omitted to pursue this vacation pay/breach of contract theory during discovery.  That is why he is now asking this Court to, in effect, **reopen discovery**, to allow him to obtain documents relevant to the vacation pay issue.  In his section of this letter, Roganti carefully avoids using the words "reopen discovery," but if one examines his specific requests, that is what he is covertly trying to do.  In his words, he seeks an Order:

a.  Directing that MetLife *produce a copy* of the AVC Plan that was in effect for Roganti on March 1, 2005;

b.  Directing that MetLife *produce appropriate documents* confirming the amount of vacation that Roganti accrued….; [and]

* * *

d.  Directing that MetLife confirm the amount of AVC issued to Roganti in 2005 together with the supporting calculation.

(*Supra*, p. 2) (italics added).

Not only has discovery closed, this Court has completed a summary bench trial and issued its Opinion.  It is far too late to amend the Complaint at this time, to add an entirely new claim.  *See AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 727 (2d Cir. 2010) (upholding denial of motion to amend because of prejudice to adversary); *Ansam Associates, Inc.* v. *Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend as prejudicial, which was sought after the close of discovery).

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 13


### 4.    *Res Judicata* Bars This Breach of Contract Claim

In a different context – when addressing Roganti's claim under ERISA for additional pension benefits – this Court rejected a different *res judicata* argument.  (Doc. No. 17).  MetLife respectfully disagrees with that ruling, but even assuming it was correct, the claim for unused PTO days is distinguishable.

The common law claim for vacation pay stands on very different footing.  MetLife's PTO policy is administered as a routine payroll practice; it is not governed by any ERISA plan.  The *only* potential defendant for the vacation pay claim is MetLife, which was a party to the FINRA arbitration.  In that arbitration, Roganti sought damages *from MetLife* for diminished fringe benefits, which includes a lower payout for unused PTO days.  Having pursued a claim for the *same damages* against *the same defendant* in a prior proceeding, Roganti is barred by *res judicata* from relitigating the same loss a second time.


### 5.    The Statute of Limitations Bars This Breach of Contract Claim

In New York, the limitations period for breach of contract is six (6) years.  N.Y. CPLR, §213. Roganti received his lump sum PTO payment in the spring of 2005, shortly after his employment ended. Thus, the statute of limitations for a claim challenging that payment expired in the spring of 2011.  The present lawsuit was not filed until long after that deadline: on January 9, 2012.

Again, because a claim for vacation pay can only be asserted against MetLife, Roganti did not need to wait for the arbitration award before he could pursue a claim for any alleged shortfall in vacation pay.  He was free to immediately pursue a claim for these damages against MetLife, based upon his theory that MetLife had engaged in various wrongful actions that reduced his PTO payment.

### D.    Roganti's Claim For An Increased Interest Rate

Roganti's claim for increased interest is also improper.  The retroactive payment amounts for the Qualified Retirement Plan were calculated using the PRA crediting rate (the interest crediting rate used for the cash balance formula of the Retirement Plan) for each year in which payments are due retroactively. According to ERISA law, the Plan Administrator has authority under the Plan to determine the interest rate for this type of retroactive payment, and the Plan Administrator has consistently applied this interest rate for correcting payment errors since 2003. Treasury Regulation section 1.401(a)-20, Q&A-10(b)(3) acknowledges that retroactive payments will sometimes need to be made for administrative reasons, but does not require a specific interest rate for the late payments.

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 14


The Court should apply MetLife's calculation of interest because MetLife has applied it uniformly and it is reasonable. MetLife is entitled to deference with respect to that determination. *See Conkright* v. *Frommert*, 130 S.Ct. 1640, 1651 (2010). Moreover, MetLife further notes that an award of 9% interest *per annum* would result in a windfall, which is contrary to the purpose and goals of ERISA. *See Henry* v. *U.S. Trust Co. of Cal., N.A.*, 569 F.3d 96, 99 (2d Cir. 2009) ("'[t]he aim of ERISA is to make plaintiffs whole, but not to give them a windfall.'"). A claim for 9% interest at the New York CPLR rate is therefore preempted. *See Flint* v. *ABB, Inc.*, 337 F.3d 1326, 1329 (11th Cir. 2003); *Barrett* v. *Hartford Life & Acc. Ins. Co.*, No. 10 Civ. 4600(AKH), 2012 WL 6929143, *2 (S.D.N.Y. Nov. 9, 2012); *Feldman's Medical Center Pharmacy, Inc.* v. *CareFirst, Inc.*, 823 F.Supp.2d 307 (D. Md. 2011).

Therefore, this Court should enter the judgment with the proposed interest amount from MetLife.

## E.    Calculations For Judgment

Without waiving any challenge to the Court's Order, in accord with the Order, as of October 31, 2013, the following income amounts were allocated to Roganti's income in the following years:

- 2003 - $1,031,000.00;

- 2004 - $1,123,000.00; and

- 2005 - $338,461.00.

As a result of these allocations, the grand totals of the retroactive payments with interest to October 31, 2013 are as follows:

| Description | Amount | Subtotal/Total Amount |
|---|---|---|
| Retroactive qualified retirement plan payment with interest | $8,526.78 | |
| Retroactive auxiliary pension payment with interest | $596,500.49 | |
| *Subtotal of Retroactive Payment for Retirement Plan & Auxiliary Pension Plan* | | $605,027.27 |
| Retroactive Employer Match for SIP with interest | $4,113.32 | |
| Retroactive Auxiliary SIP Amount with interest | $151,910.58 | |
| *Subtotal of Employer Match for SIP and Auxiliary SIP Amount with interest* | | $156,023.90 |
| **TOTAL** | | **$761,051.17** |

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 15

Accordingly, without waiving any arguments as to the substance of the Order, MetLife states that the proper amount that should be entered as the judgment is $761,051.17. In this judgment, MetLife also requests that the Court incorporate the methodology utilized in MetLife's in its October 29th letter to Roganti's counsel.

### III. <u>Plaintiff's Reply to MetLife's Position Statement</u>

We first received MetLife's response letter to the Court earlier today. There is inadequate time to fully address all of the issues raised in the letter. This is the first time that MetLife has made us aware of its position that Roganti was never eligible for AVC and that the payment made to him when he left in 2005 was for PTO and not for AVC. Moreover, this is the first we learned that the Plans changed in 2001 and that there was a 50 day cap for all vacation accrued from that point forward. We have also learned for the first time that there may be some confusion in the language used in our letter.

Our goal is to get it right. MetLife is asking this Court to enter a judgment based on figures and arguments set forth in its letter. We respectfully submit that it would be a mistake to enter a judgment without the opportunity to review supporting documents. The reasonable and appropriate thing to do is to review the documents relied upon by MetLife in preparing its portion of the letter and that it maintains in its files. It is our understanding that MetLife created different plans for people who worked in the field as opposed to the home office. Therefore, documents relied on by MetLife must apply to Roganti's title. It is our position that the following documents should enable us to ensure that the figures used in rendering a Judgment are accurate:

- Documents evidencing the definition of AVC which applied to people who work in the field;
- The compensation manual for people who worked in the field;
- The Plans for PTO and AVC that cover Roganti
- Amendments to Plans (MetLife references changes made in 2001) that reflect when the changes were made and that establish that the Plans were in effect on March 1, 2005;
- The manuals that govern PTO and AVC payments as of March 1, 2005;
- The calculations and backup to support the methodology used to calculate the vacation pay that Roganti did receive in 2005;
- The calculations and backup to support the methodology used to arrive at an adjusted back pay figure for PTO of $599,253; and
- The backup should confirm the figures used for average income, number of accrued weeks and the formula(s).

This information will enable the parties to agree on the accuracy of the figures.

Hon. Paul A. Engelmayer, U. S. D. J.
Re: *Ronald A. Roganti* v. *Metropolitan Life Ins. Co. et al.*
    Civ. Act. No. 12 Civ. 161 (PAE)
November 8, 2013
Page 16

### Additional Concerns

MetLife has identified money that it believes is due and owing if there is no appeal. To the best of our knowledge, MetLife has not indicated that it will adjust the pension on a going forward basis. That being the case, the amount of any judgment will be inconsistent with the amount actually owing if MetLife does not make adjusted monthly pension payments. Therefore, it is respectfully requested that this Court Order that MetLife pay the adjusted pension to Roganti effective November 1, 2013.  This is in addition to the back pay from March 2005 to October 31, 2013.

Finally, MetLife has indicated that the Back Pay for the vacation is $182,063 ($599,253-417,190). MetLife concedes that Roganti requested unpaid vacation and that Dean Witte denied the request (MetLife Exhibit A). Mr. Witte denied the request because the Panel did not clarify what was meant by compensatory damages. It is now clear that the Award was for benefits eligible back pay. Therefore, there is no good reason that Roganti should not receive the accrued vacation. If MetLife's figures are correct, then it is respectfully requested that judgment should be entered for $182,063 plus interest at 9%. If MetLife's figures are wrong, then judgment should be entered for the appropriate amount with interest. This would all be in addition to the money due and owing for the Pension and the SIP and for future pension payments.

## IV. Joint Request

The parties respectfully reserve their rights to assert any further arguments in support of the issues raised in these letters and request that to the extent that the Court seeks to resolve these matters, it allow the parties an opportunity to fully brief all of these issues.

Respectfully submitted,

Michael H. Bernstein

Cc: David Gabor, Esq.

# EXHIBIT A

# MetLife

Dean Witte
Vice President
Sales and Broker Compensation Administration
18205 Crane Nest Drive
Tampa, Fl 33647


Ronald A. Roganti
26 Pequot Lane
New Canaan, CT 06840

Re: Claim for Recalculation Unused Vacation Time

Dear Mr. Roganti:

Your letter of March 24, 2011, in which you request that your FINRA Dispute Resolution award of $2,492,442.07 ("Award") be considered for the purpose of calculating any amounts paid to you as unused Paid Time Off ("PTO"), was forwarded to me in Field Payroll for response.

In 1999 the Company announced and made a change to the field management vacation policy effective as of January 2001. In sum, the change required all accrued but unused vacation days to be submitted by field management and valued ("2000 Vacation Bank"). On a prospective basis, this change also capped unused PTO that could carry forward and be used in future years at 50 days.

In order to calculate the value of pre-2000 accrued but unused vacation days, the Company asked field managers to submit a form listing all unused management vacation days by year from 1982 through December of 2000. The days listed by field management on the form were valued at the average weekly rate of compensation for the manager in the year the days were accrued but not taken. The 2000 Vacation Bank value was to be paid to managers on retirement or termination. Our records indicate that your 2000 Vacation Bank was valued at $317,714.24.

After January 1, 2001, consistent with the Company's PTO policy, unused PTO was paid and valued as of your retirement on March 4, 2005. The value of these unused PTO days was calculated based on your average weekly management comp paid in the 52 weeks preceding your last day of employment. This calculation resulted in a PTO value of $ 99,475.96.

Both the value of your 2000 Vacation Bank and your unused PTO days were paid to you as of your retirement in 2005, for a total payment of $ 417,190.20.

The FINRA Dispute Resolution Award submitted for consideration does not indicate that the Award is to be treated as management compensation earned by you during the time you were an employee. The Award sets forth the "Relief Requested":

> "Claimant requested unspecified compensatory damages, unspecified punitive damages, an accounting of R. Roganti & Associates' revenues and expenses, appropriate back pay, front pay and reimbursement for lost benefits, attorneys' fees, costs, disbursements, interest, and such further and additional relief as the Panel may deem just and proper."

However, despite your request for very specific and varying types of relief, the Panel's Award is worded as follows:

> "1.  Respondent is liable for and shall pay to Claimant compensatory damages in the amount of $2,492,442.07 above its existing pension and benefit obligation to Claimant.
> 2.  Any and all relief not specifically addressed herein, including punitive damages, is denied."

In the Relief Requested section of the Award document, "compensatory damages" are a separate type of relief requested by you and are distinct from back pay, front pay and reimbursement for lost benefits. In addition, the Award document specifically states that any and all relief not specifically addressed is denied.

We believe that the language of the Award document denies classification of the award as back-pay. Consequently, we do not feel that treatment of the Award amount as management compensation earned while you were in your management role is justified.

In light of the fact that only management compensation paid while you were employed was considered for the purpose of calculating all management 2000 Vacation Bank values and the values for unused PTO days, we do not believe that any further enhancement to the amounts paid to you as value for your accrued unused vacation and PTO time is required.

Please be advised that the vacation and PTO programs at MetLife are excepted from ERISA plan status as a payroll practice. Therefore there are no ERISA documentary or appeal rights stemming from the Company's operation and administration of the vacation or PTO programs.


Sincerely,